UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FREDERICK LEE,** | ) CIV F 04-5607 AWI DLB |
| **Plaintiff** | ) |
| vs. | ) **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION** |
| **CITY OF MADERA, MADERA POLICE DEPARTMENT; OFFICER JOCELYN BECK, OFFICER WARREN WEBSTER, SGT. JOHN R. MARKLE and MICHAEL B. KIME, Chief of the Madera City Police Department, in his Individual and Official Capacity.** | ) Doc. # 51 |
| **Defendants.** | ) |

This is an action for damages pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of plaintiff Fredrick Lee's ("Plaintiff's") rights under the Fourth and Fourteenth Amendments and pursuant to sections 52 and 52.1 of the California Civil Code.  The complaint alleges that defendants Jocelyn Beck, Warren Webster, and Sgt. John R. Markle (the "individual Defendants") violated Plaintiff's rights under the First and Fourteenth Amendments when Officer Beck executed a traffic stop and arrest on Plaintiff without probable suspicion or probable cause and when the individual officers used unreasonable force to effectuate an arrest that caused significant injury to Plaintiff.  The complaint alleges defendants City of Madera,

Madera Police Department, and Madera City Police Chief Michael Kime (hereinafter, the "Madera City Defendants") are liable for negligent hiring, training and supervision under federal law and are vicariously liable for the acts of the individual Defendants under state law.  In the instant motion, the individual Defendants and the Madera City Defendants (collectively, "Defendants") seek summary judgment, or in the alternative, summary adjudication as to all claims alleged.  This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1331.  Venue is proper in this court.

## PROCEDURAL HISTORY

The complaint in this case was filed on April 22, 2004, and the Defendants' answer was filed on July 21, 2004.  Through a long series of stipulated continuances, the discovery cut-off date was ultimately continued to June 27, 2008, and the deadline for dispositive motions was continued to June 27, 2008.  The instant motion for summary judgment was filed on May 23, 2008.  After a stipulated continuance of the due date, Plaintiff's opposition was filed on August 29, 2008.  After another stipulated continuance, Defendants' reply was filed on October 20, 2008.  The hearing on Defendants' motion, which was continued to October 27, 2008, was vacated and the matter was taken under submission as of that date.

## PLAINTIFF'S ALLEGATIONS

The complaint alleges Plaintiff was stopped by Defendant Beck after Plaintiff made a lawful left turn.  In the course of the stop, Beck was joined by the other two individual Defendants.  Plaintiff alleges that he obeyed all commands by individual Defendants during the stop. Plaintiff alleges he was placed in handcuffs without cause and that in the process of applying the handcuffs, excessive force was applied even though Plaintiff repeatedly notified individual Defendants that he had a "fused wrist."  Defendant alleges the application of the excessive force resulted in injury to his wrist and to other parts of his body.

Plaintiff alleges that he was subjected to a traffic stop for making an unsafe turn in violation of California Vehicle Code section 21801, and for resisting arrest in violation of California Penal Code section 148(a)(1) and that probable cause was lacking for arrest on either charge.  Plaintiff alleges he was subjected to stop, arrest, and excessive force by individual

Defendants because Plaintiff is African-American. A criminal complaint was subsequently filed in Madera Superior Court alleging one count of making an unsafe turn and three counts of resisting arrest. Plaintiff was found not guilty on the three counts of resisting arrest following a jury trial that was held on December 16, 2003. The verdict was entered in Madera case number MCR015821 on December 17, 2003. Plaintiff was subsequently found not guilty of the traffic violation by the trial court judge.

Plaintiff's second claim for relief alleges that improper hiring, training and supervision of the individual Defendants by the Madera City Defendants was the cause of the violations of Plaintiff's rights under the Fourth and Fourteenth Amendments. Plaintiff alleges that the Madera City Defendants knew or should have known of prior instances involving the application of excessive force by the individual Defendants. Plaintiff alleges that the Madera City Defendants' failure to properly discipline the individual Defendants' behavior constitutes tacit authorization of the unlawful behavior.

Plaintiff's third claim for relief incorporates the factual allegations set forth in the first two claims and alleges violation of California Civil Code sections 52 and 52.1 and article 1, subsections 7 and 13 of the California Constitution against all Defendants.

**DEFENDANTS' UNDISPUTED MATERIAL FACTS
AND PLAINTIFF'S DISPUTED MATERIAL FACTS**

Plaintiff is an African-American male who is 6'4" tall and weighed about 215 pounds at the time of the events giving rise to this action. Defendant Beck is a female who is about 5'4" tall. The individual Defendants were all employed as officers by the City of Madera Police Department during the time in question. On April 23, 2003, Beck was traveling in her patrol car on a street in Madera while Plaintiff was traveling in the opposite direction on the same street. Plaintiff made a left turn in front of Beck. The parties dispute how close Plaintiff was to Beck's patrol car when Plaintiff's car crossed in front of the patrol car. Defendants allege the distance was about 25 feet and that Beck had to slam on her brakes in order to avoid a collision with Plaintiff's car. Plaintiff testified at trial that the distance between his car and the patrol car was about 50 yards at the time he executed his left turn, and that he was traveling at about five to eight miles per hour while he was making the turn.

3

|   |   |
|---|---|
| 1 | Plaintiff continued to drive for a time after making the left turn and then pulled into the parking lot at a convenience store/gas station, where he exited his vehicle. Defendant Beck pulled into the parking lot behind Plaintiff and exited her vehicle. The parties agree that Beck asked Plaintiff twice to get back into his vehicle and that Plaintiff recognized Beck as a law enforcement officer. Plaintiff replied to Beck, "you need to tell me what you want." Defendants allege that when Plaintiff was talking to Beck "he made hand movements and threw his arms up." Defendants allege Plaintiff did not immediately follow Back's instructions and instead asked, "what do you need?" Plaintiff disputes this version of the facts alleging that he simply made a "what?" gesture of exasperation or questioning. Plaintiff alleges he did not delay in getting back in the car and was already on his way back into the before Beck answered his questions. |

It is undisputed that the other individual Defendants, Officer Webster and Sgt. Markle arrived at the parking lot sometime after Beck told Plaintiff to get in the car to retrieve his vehicle registration and insurance information. Plaintiff disputes that Webster and Markle arrived in response to Beck's radio transmission that the situation was not under control. Plaintiff alleges Beck did not request back-up.

The parties agree that Webster and Markle approached the area where Plaintiff and Beck were standing. Plaintiff was asked to get out of the car. Defendants allege Plaintiff was pulled from the car by Webster and Markle. Plaintiff sharply disputes this version of the facts, alleging that he was already out of the car when Webster and Markle arrived. Plaintiff testified at trial that "he had his wallet in one hand and cell phone in the other hand when he got out of his car and [officers Webster and Markle ] jumped on him." Doc. # 57-3 at ¶ 15. Plaintiff was asked to put his hands behind his back. Plaintiff replied that his right wrist was fused. Plaintiff was holding his hands relaxed at his sides at the time.

The parties dispute the details of Plaintiff's handcuffing. Defendants allege that one of the individual Defendants grabbed Plaintiff's left hand or wrist and bent it in an upwards fashion and that Plaintiff reacted by trying to bring his hand down. Plaintiff alleges one of the individual Defendants, after being told that Plaintiff's right wrist was fused, grabbed it, twisted

it and bent it up.  Plaintiff alleges he tried to lower his hand so that his wrist would not be hurt any more and to avoid further injury.  Plaintiff alleges he did not lower his hand forcefully.

The parties agree that an unidentified officer who was behind Plaintiff attempted unsuccessfully to trip Plaintiff by kicking his legs.  The individual Defendants then moved Plaintiff to the front of a patrol car.  The parties agree that Plaintiff's hands were behind him when the officers moved Plaintiff to the front of the patrol car but there is disagreement as to whether Plaintiff's hands were cuffed at the time.  Defendants allege Plaintiff's hands were not cuffed and Plaintiff alleges they were.  Defendants allege Plaintiff resisted when Officers attempted to take him into custody.  Plaintiff vigorously disputes this allegation.

With respect to Defendants' allegation that Plaintiff resisted when officers attempted to take him into custody, the court notes that the evidence cited describes Plaintiff's conduct but does not attach the description of resistance to that conduct.  Defendants are either attempting to convey their subjective assessment of witness descriptions of Plaintiff's conduct or are trying to attach a legal conclusion to the witness testimony.  In either event, the proffered undisputed material fact is inappropriate as set forth and will be disregarded.  The evidence from which the proffered fact is derived is duly noted.

Defendants allege Plaintiff was arrested by Beck for resisting arrest and failure to provide evidence of identity.  Plaintiff disputes the proffered fact, alleging he was arrested for resisting arrest and making an unsafe left turn.  Plaintiff denies he was arrested for failure to provide evidence of identity.  Although Defendant Beck states in her declaration that Plaintiff was arrested for failure to provide evidence of identity, the court can find nothing from the proceedings in state court that would indicate that is the case.  The court notes Defendants allege that Plaintiff did not provide a driver's license or vehicle registration at the scene of the incident and that Plaintiff disputes the proffered fact that Plaintiff had his wallet that contained his driver's license in his hand when he was taken into custody and that he did not have time to retrieve the vehicle registration from the car before he was arrested.

Defendants allege Plaintiff does not contend that Beck used excessive force on him. Plaintiff appears to agree that he testified at trial that Beck did not use excessive force.

However, Plaintiff's attorney clarified that Plaintiff was mistaken in that the evidence shows that Beck pushed Plaintiff from behind when the individual Defendants were shoving plaintiff over the hood of the patrol car while making the arrest. To the extent Defendant's use Plaintiff's statement for evidence that Beck did not touch or apply force to Plaintiff, the evidence is admissible but disputed. To the extent Defendants proffer of the undisputed material fact is offered to establish a legal conclusion, it is not admissible since a lay witness cannot offer testimony to establish a legal conclusion.

It is undisputed that Plaintiff did not complain that he had been injured to the officers the day he was taken into custody. Plaintiff vigorously disputes Defendants' contention that the only injury suffered by Plaintiff was a sore right wrist. Plaintiff alleges he suffered a tear of the triangular fibrocartilage complex, injury to his lower back and numbness in his right wrist for four weeks.

Defendants' allegation that individual Defendants Webster and Markle used reasonable force to detain and arrest Plaintiff will be disregarded as improper legal conclusion. Defendants contend there is no evidence Plaintiff was arrested or detained because he is African-American.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which

the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus,

the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

**I. First Claim for Relief Against Individual Defendants**

Plaintiff's first claim for relief alleges violation of Plaintiff's rights under the Fourth and Fourteenth amendments as well as under California statutes and the California Constitution. For analytical purposes, Defendants' motion for summary judgment as to Plaintiff's first claim for relief breaks down into three separate fact-based issues. In order to prevail on their motion for summary judgment as to Plaintiff's claim of Fourth amendment violation, Defendants must first meet their initial burden to show there is no issue of material fact as to whether probable cause existed for the traffic stop. If Defendants can show there exists no material issue of fact with respect to probable cause for the stop, they must then demonstrate there remains no material issue of fact with respect to Plaintiff's allegation of excessive force. Defendants' motion for summary judgment as to Plaintiff's allegation of violation of his Equal Protection rights under the Fourteenth Amendment require that Defendants demonstrate the lack of any material issue

of fact as to the existence of a constitutional violation, or, if Defendants cannot show the absence of any constitutional violation, the lack of any issue of material fact as to whether the violation was the result of Plaintiff's race.

### *A. Probable Cause for the Stop*

Defendants' motion for summary judgment as to Plaintiff's claims that his stop was without probable cause and that he was subjected to unreasonable force when he was arrested must fail. Plaintiff was a percipient witness to the events in question. As a consequence, his recollections and impressions of the events are sufficient to constitute an issue of material fact to the extent they contradict Defendants' version of the facts. Defendants allege Plaintiff turned left 25 feet in front of Beck; Plaintiff alleges it was 50 yards and Beck was not required to slam on her brakes to avoid collision. In their reply to Plaintiff's opposition, Defendants contend the difference in accounts of the distance between Beck's police vehicle and Plaintiff at the time of Plaintiff's left turn is not sufficient to raise a disputed issue of material fact. The court disagrees. If left-turn Plaintiff executed in front of Beck's care was lawful, there would be no probable cause for the stop. Assuming the facts as Plaintiff alleges them, the distance of 50 yards between his car and Beck's and the relative speeds of the cars alleged, and the allegation that Beck was not required to apply her brakes to avoid hitting Plaintiff's car, the court cannot hold that Plaintiff's left-turn was other than lawful as a matter of law. Plaintiff's version of the facts therefore raises a disputed issue of material fact as to whether probable cause existed for the initial traffic stop.

The facts surrounding Plaintiff's detention after the stop are similarly in contention. Defendants allege Plaintiff failed to present evidence of identity; Plaintiff alleges he had his wallet in his hand and that he was not allowed to go the cars' glove compartment to look for the registration. Plaintiff also disputes Defendants' allegation that he failed to follow Back's instructions or that he refused to exit the car. Again, if Plaintiff's version of the facts is taken as true; that is, that he had his wallet in his hand ready for inspection, and that he cooperated with Defendants' directions, then Defendants seizure of Plaintiff on the ground of failure to identify or to follow instructions is unreasonable. In short, the two facts Defendants rely upon to argue

the stop and arrest were justified – the unsafe left turn and the forcibly to provide identification – are directly disputed by Plaintiff's testimony as a percipient witness. In addition, the testimony of at least one non-party witness tends to support Plaintiff's claim that he was placed in custody before he was able to reenter the car and look for the car registration.

### B. Excessive Force

The factual basis of Defendants' contention that evidence is lacking to show any excessive force claim against Beck is likewise in dispute. Plaintiff's opposition to Defendants' motion for summary judgment disputes Defendants' version of the facts as to whether Beck applied force during the forced removal of Plaintiff from his car and also with respect to whether Beck participated in forcing Plaintiff's head down onto the hood of the car. Plaintiff alleges that Beck assisted the other individual Defendants in forcibly removing Plaintiff from his car. Although Plaintiff stated during his deposition that Back did not force his head down onto the car hood, Plaintiff's attorney states that other evidence indicates that Beck did apply force to Plaintiff's head from behind. Given that the factual basis for the justification of that force is in dispute, it follows that there remains an issue of material fact as to whether Defendant Beck used excessive force. Summary judgment is therefore not warranted as to Plaintiff's claim for excessive force against Beck.

The court finds Defendants have failed to carry their burden to show that there are no issues of material fact as to whether Plaintiff's stop and arrest were justified by probable cause or probable suspicion. Summary judgment is therefore not warranted as to Plaintiff's claims for stop and arrest or as to defendant Beck's use of excessive force in violation of the Fourth Amendment.

### C. Fourteenth Amendment

Plaintiff's first claim for relief is somewhat ambiguous as to whether or not a Fourteenth Amendment equal protection claim is alleged or whether Plaintiff is alleging a Fourteenth Amendment due process claim. To the extent Plaintiff's first claim for relief states a Fourteenth Amendment equal protection claim against the individual Defendants, Defendants move for summary judgment alleging Plaintiff has failed to produce any evidence at all that would tend to

indicate discriminatory intent on the part of the individual Defendants.  So far as the court can discern, Plaintiff's opposition contains no reference to an equal protection claim.

As previously discussed, where the non-moving party has the burden of proof at trial, the party moving for summary judgment may meet its burden of production by pointing out that the opposing party lacks evidence to prove some necessary element of its claim.  Nissan Fire & Marine Ins., 210 F.3d at 1102.  Here, Defendants have met their burden by pointing out that there is absolutely no evidence to support Plaintiff's bare allegation in his first claim for relief that the treatment he experienced at the hands of the individual Defendants was a result of Plaintiff's African-American race.  In order to avoid summary judgment, Plaintiff has the burden to produce some evidence to show there is a material issue of fact as to whether his treatment was the result of racial discrimination by the individual Defendants.  Plaintiff has produced no evidence of race-based discrimination and does not argue in opposition to Defendants' motion that considerations of race did play a role in the treatment Plaintiff experienced.  Summary judgment will therefore be granted to the extent Plaintiff's first claim for relief alleges a Fourteenth Amendment equal protection claim.

To the extent Plaintiff's complaint is intended to alleges a Fourteenth Amendment substantive due process claim, that claim is improper in light of Plaintiff's claim under the Fourth Amendment.  While the Fourteenth Amendment confers both procedural and substantive due process rights, Armendariz v. Penman, 75 F.3d 1311, 1318 (9th Cir. 1996), the substantive due process rights – that is, the rights pertaining to personal liberty interests – that are reached by Fourteenth Amendment substantive due process are restricted to those right that are "deeply rooted in this Nation's history and tradition."  Moore v. East Cleveland, 431 U.S. 494, 503 (1977).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims."  Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Grahm v. Connor, 490 U.S. 386, 395 (1989).  As this court has observed, the Albright Court specifically held that "where the Fourth Amendment is the source of the limitations on the type of conduct challenged by a plaintiff's

11

claims, rather than the more general substantive due process protections guaranteed by the Fourteenth Amendment, must govern the plaintiff's claim." Martin v. City of South Lake Tahoe, 2007 WL 2176372 (E.D. Cal. 2007). Based on the foregoing, the court concludes that, to the extent Plaintiff's complaint alleges a Fourteenth Amendment substantive due process claim, summary judgment will be granted as to that claim.

**II. Plaintiff's Claims Against the Madera City Defendants**

Plaintiff's second claim for relief alleges liability against the Madera City Defendants pursuant to Monell v. Dep't of Soc. Services, 436 U.S. 658 (1978). Under Monell, local government liability for the constitutional violations of its officers is limited to instances were the constitutional violation is the result of official policy. Id. at 694. Where there is no official policy that can be said to have caused the harm, a plaintiff may establish municipal liability by showing either; (1) that the individual who committed the constitutional tort was an official with "final policy-making authority" whose actions therefore constitute official policy; or (2), "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gellette v. Delmore, 979 F.2d 1342, 1346-1347 (9th Cir. 1982). In addition, the Supreme Court has held that municipal liability under section 1983 may arise where there is a conscious decision to not train that amounts to deliberate indifference to the rights of the persons with whom the police come into contact and the lack of training is the cause of the constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989); Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989). However, a "municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. [Citations.]" Sepatis v. City and County of San Francisco, 217 F.Supp.2d 992, 1005 (N.D. Cal. 2002).

In the complaint, Plaintiff's allegation of liability under Monell was based on allegations that individual Defendants Beck, Webster and Markle "had been involved in several other incidents involving unreasonable use of force on others they had arrested, which incidents, Plaintiff believes, should have been or were known to [Madera City Defendants.]" Complaint at ¶ 23. The complaint alleges that the Madera City Defendants' refusal to address the individual

Defendants' past practices involving the use of excessive force constitutes evidence of inadequate training amounting to deliberate indifference to the rights of the persons the police come into contact with.

As previously noted, because Plaintiff has the burden of proof at trial, Defendants may meet their initial burden in their motion for summary judgment by alleging the absence of any evidence to support a necessary element of Plaintiff's claim. The element Defendants contend is lacking is any official policy that resulted in harm to Plaintiff, including any evidence that the training provided by the Madera City Defendants was deliberately indifferent in the hiring, training or discipline of its police officers. Having asserted the lack of evidence as to a necessary element of Plaintiff's claim, Defendants shift the burden of production to Plaintiff to present some evidence to show there exists an issue of material fact as to Plaintiff's allegation of deliberate indifference.

Significantly, Plaintiff's opposition to Defendants motion for summary judgment with respect to the Madera City Defendants' <u>Monell</u> liability makes reference to individual Defendant Beck only and makes no reference at all to Webster or Markle. Plaintiff, in his opposition to Defendants' motion for summary judgment, explained:

> Plaintiff's theory for *Monell* liability is that Beck was an inexperienced police officer who has documented problems with fear, lack of assertiveness/failure to engage and lack of knowledge and experience and mishandled a simple traffic stop. This shows a failure in training and/or supervision policy by the City of Madera.

Doc. # 57 at 18:20-24. Plaintiff alleges Beck's supervising officer and evaluator, Sgt. Cartwright, prepared a 6 page memo in 2003 that memorialized the above-stated observations. The memo was allegedly included in a counseling meeting on May 2, 2003, and subsequently was incorporated into Beck's evaluation of August 16, 2003.

Plaintiff's proffer of facts fails to support the contention that the Madera City Defendants made a conscious decision to not train or supervise the individual Defendants that was deliberately indifferent to the rights of the people. If anything, Plaintiff's proffer of facts shows the opposite. The incident giving rise to this action occurred on April 23, 2003. Although Plaintiff points to Sgt. Cartwright's evaluation of Beck as indicating knowledge of

1   Beck's alleged inability to control a routine traffic stop, there is no indication that the
2   memorandum referred to was written prior to the April 23 traffic stop.  Even if the
3   memorandum did precede the traffic stop, that fact falls far short of showing deliberate
4   indifference to the rights of citizens.
5       From Plaintiff's proffer of facts, it is apparent the Madera City Defendants had in place a
6   system for making employee evaluations, and for using those evaluations for counseling or
7   training purposes.  The fact Beck may not have been fired at the first indication that she was
8   fearful or in some other way unfit for the rigors of police duty in no way demonstrates deficient
9   training and supervision, let alone deliberate indifference to training and supervision needs.
10  Indeed, if the court were to hold that a jurisdiction has the duty to fire an employee at the first
11  indication that person may have some deficit in the required mental or emotional prerequisites
12  of the job, the entire basis for on-the-job training and supervision would be undercut.  The facts
13  adduced by Plaintiff, taken as a whole indicate that sometime in the vicinity of the April 23
14  traffic stop, Beck was evaluated and found to have some problems with regard to assertiveness
15  and fearfulness.  It is also apparent those issues were being addressed through existing
16  counseling and evaluations structures.
17      There are absolutely no facts alleged by Plaintiff that would tend to show that any policy,
18  practice or lack of policy or practice resulting from the indifference of the Madera City
19  Defendants to the rights of people was in any way responsible for the harm Plaintiff alleges.
20  Summary judgment will therefore be granted in favor of Defendants with respect to Plaintiff's
21  claims as set forth in Plaintiff's second claim for relief.

**III. Plaintiff's Claims under California Civil Code sections 52 and 52.1**

23      Plaintiff's first claim for relief alleges violation of California Civil Code sections 52 and
24  52.1, in addition to violation of the Fourth and Fourteenth Amendments, against the individual
25  Defendants only.  Plaintiff's third claim for relief alleges violations of sections 52 and 52.1
26  against all Defendants.  The parties agree that, as to the individual Defendants, liability under
27  section 52 and/or 52.1 is predicated on a finding of violation of Plaintiff's rights under the
28  Fourth Amendment.  Since the court concludes it cannot grant Defendants' motion for summary

judgment as to Plaintiff's first claim for relief against the individual Defendants, it follows that the court cannot grant summary judgment as to Plaintiff's third claim for relief against the individual Defendants.

Unlike the limited liability imposed on municipalities under federal law as explained in Monell, California law provides that a governmental entity may be held vicariously liable for the acts of its employees. Cal. Gov. Code § 815.2(a); Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2001).  Under California law, the municipality is liable to the same extent an officer would be for the acts committed, which means that the municipality is entitled to immunity only if, and to the extent, that the offending officer is entitled to immunity.  Robinson, 278 F.3d at 1016.

Defendants do not assert any affirmative defenses in their motion for summary judgment. Rather, Defendants contend that the facts they allege, if proven, would amount to clear probable suspicion for the traffic stop, clear probable cause for the arrest and would show a lack of excess force when the arrest was conducted. As previously noted, summary judgment is not warranted in this case because it is the facts themselves, not the way they are construed, that are in dispute in this action. For purposes of liability under Cal. Civ. Code §§ 52 and 52.1 pursuant to Cal. Gov. Code § 815.2(a), summary judgment for the Madera City Defendants is not warranted because summary judgment for the individual Defendants is not warranted as to Plaintiff's Fourth Amendment claims.

**IV. Punitive Damages**

Defendants also move for summary judgment as to Plaintiff's claim for punitive damages. As Defendants note, punitive damages are only proper where there is a demonstration of malice or "reckless or callous indifference to the federally protected rights of others." Doc. # 51-1 at 13:14-15 (citing Smith v. Wade, 461 U.S. 30, 56 (1983). Plaintiff has alleged that he was detained after making a lawful turn and suffered injury when an officer applied force to his arm without probable cause after the officer was told that Plaintiff had a physical condition that would predispose Plaintiff to injury if force was applied. Based on those allegations and construing the facts in favor of the non-moving party, the court cannot hold as a matter of law

that Defendants have carried their burden to show there is no issue of material fact as to Plaintiff's claim for punitive damages. Summary judgment will therefore be denied.

THEREFORE, in consideration of the foregoing discussion, it is hereby ORDERED that:

1. Defendants' motion for summary judgment as to Plaintiffs' Fourteenth Amendment claim as set forth in his first claim for relief is hereby GRANTED.
2. Defendants' motion for summary judgment as to all other claims set forth in Plaintiff's first claim for relief, including all Forth Amendment claims and claims related to alleged Fourth Amendment violation is hereby DENIED as to all individual Defendants.
3. Defendants' motion for summary judgment is hereby GRANTED as to the entirety of Plaintiff's second claim for relief against the Madera City Defendants under 42 U.S.C. § 1983.
4. Defendant's motion for summary judgment as to Plaintiff's third claim for relief under California Civil Code sections 52 and 52.1 is hereby DENIED as to all Defendants.
5. Defendants' motion for summary judgment as to Plaintiff's claim for punitive damages is hereby DENIED.

IT IS SO ORDERED.

**Dated:   November 20, 2008**                   **/s/ Anthony W. Ishii**
                                                  CHIEF UNITED STATES DISTRICT JUDGE